[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
SUPPLEMENTAL MEMORANDUM OF DECISION
On April 29, 1997, this Court decided the applicability of the Hague Convention to the facts involved in this case. That decision is appended hereto.
The Court found on that date that the habitual residence of the family, under the Hague Convention, was Mykonos, Greece. The Court made that finding despite the following facts:
1. That applicant husband agreed that it was his intention, ultimately, to live 50 percent of the time in the United States with his family.
2. That the applicant husband falsified documents when he claimed that the family's habitual residence was Athens, Greece, in his application under the Hague Convention, as well as in his divorce action in Greece.
The Court further found at that time, by clear and convincing evidence, that there was a risk of both short and long-term psychological harm to the child if that child were returned to Greece without the mother. Consistent with case law cited in the Court's decision on April 29, 1997, the Court found the mother could not take advantage of that situation by not going with the child to Greece, provided, however, that there were reasonable undertakings by the husband which would protect her and the child. Those undertakings included items such as proper housing, financial support, freedom from contempt and other court proceedings which would endanger the child by removing the child from the mother.
In order for the Court to design appropriate undertakings and to rule on various proposals for undertakings by the parties, the Court sought information and additional data.
First, the Court sought a financial affidavit from the father CT Page 8748 because of the inconsistency between the father's testimony in court that he earned $100,000.00 in U.S. money and his tax returns from Greece which reflected $10,000.00 in income.
Second, the Court sought some contact with Greek authorities to reduce the need of a bond of assurance or guarantee on any promises, particularly in the light of the misrepresentations of the father.
Despite the assistance of counsel here, those requests were not accomplished. First, the Court, after several months, received a purported affidavit from the father which was not sworn to. That document reflected a net income of $20.00 per week after expenses. Originally, the delay in receiving that document was explained by way of a claim of lack of understanding in Greece as to what this Court desired. Later, a conference call to Greece revealed that the delay was occasioned by a decision of Greek counsel.
This Court, with the understanding and approval of all counsel, has decided no longer to wait to establish undertakings. Reasonable speed is not only necessary under the Hague Convention, but also, in this case, decisions are necessary because an ex-parte order entered by the Greek court on behalf of the applicant husband in a divorce action in Greece becomes final on September 26, 1997.
The Court finds the following:
Applicant husband's testimony in Connecticut was reasonably accurate as to his finances when he claimed that he earned net from his business the equivalent of $100,000.00 U.S. dollars plus rental from his property. That testimony was supported by the way the parties lived, including the fact that the family could not have flown back and forth so many times to the United States without having that substantial income.
Second, it was substantiated by the husband's testimony as to what he spent to equip their home in Mykonos. Therefore, the $100,000.00 income was consistent with their living style and the net of $20.00 per week was not.
Both parties submitted proposed undertakings for the father, but at the time of the hearing on that issue, agreed to a number of points. They agreed that Kathleen Patricia Pantazatou, the CT Page 8749 respondent under the Hague Convention application and plaintiff in the divorce action here and the defendant in the divorce action in Athens, Greece, would most likely live in Greece, pending a decision by the Greek court if she were to go back to Greece because the court was in Athens; and therefore, they agreed a cost-of-living figure in Athens for the child and mother for the purposes of the undertakings to be supplied by the father. They agreed that the family needs was $1,000.00 U.S. dollars per week for the family needs, including food, housing, telephone, etc. They also agreed that transportation costs, round trip from New York to Paris for mother and daughter would be $1,750.00 to be paid by the father. They also agreed that an escrow for the above mentioned purposes would be held by the attorney for the wife in Greece, Attorney Spyros Bougatso. It should be noted that an escrow could not be deposited in the United States, because of currency restrictions of removal of money from Greece. They disagreed as to the number of weeks escrow should be held by Attorney Bougatso and left that to the Court to decide. They also agreed that the husband's medical insurance, in effect for the parties during the time they lived together, would be continued by the husband and proof of same would be forwarded to counsel for the wife. Accordingly, this Court will order those undertakings. The parties have agreed that there be joint custody of the minor child, Nicole, with the principal place of residence with the mother with reasonable rights of visitation in the plaintiff father. The specifics of those visitation rights to be decided by the Greek court at a later date. Although this Court might not have, on its own, entered such an order, in as much as the parties have agreed to it, the Court will order that as an undertaking of the parties.
Legal costs for attorney in Greece: The parties disagreed as to what that would cost. The Court agrees with counsel for the father that the issues related to the Hague Convention are separate and distinct and; therefore, the undertakings that would be ordered by this Court with regard to responsibility of the father would be limited to the litigation in Greece and here, concerning the divorce. That may depend upon what the fight is over. If there is no fight over custody and visitation this would be a rather limited issue. The wife is not seeking any alimony, so that would be out of the picture, and the only remaining issue would be a split of property. That would be of minimal cost; however, if there is a fight on the custody and visitation issues, that could be a very substantial amount. In my opinion, if that were to occur, it would cost her at least $50,000.00 in CT Page 8750 Greece. Based upon that assumption, the Court will order that if there is a contest, until the Greek attorneys say otherwise, I will order that he pay $25,000.00 to Attorney Bougatso as attorneys fees for wife's attorney to be held in escrow, because he has two businesses, earns a very substantial amount of money and her capacities are limited. Obviously, if the parties resolve their difficulties that sum can be reduced.
There were some items that were not discussed in argument, but nevertheless, were agreed to because the parties agreed to custody issues and principal place of residence of the child. The Court will order them for that reason, as well as the fact that it's necessary in order to protect the child from separation from the mother. Those undertakings are as follows:
1. The Greek court's order granting father custody should be vacated because that is inconsistent with the agreement of the parties.
2. No contempt actions should be brought against the mother because that could result in a separation of the child from the mother and would be inconsistent with the undertakings that both parties are agreed to here.
3. The kidnapping charge in the Mykonos Judicial District should be withdrawn, and father should not prosecute that criminal action against the mother. Again, that would be inconsistent with their agreement as well as the necessity of protecting the child.
There is a proposal related to division of the property in accordance with Greek law. The court will not enter that as an undertaking. Although that would appear to be reasonable, I would defer it to the Greek court on that issue.
The Court would note that the financial orders entered by this Court as undertakings are not for permanent orders. None of these undertakings involve alimony. The issue in this case was asked to decide is how long these undertakings, that the parties have agreed to, should remain in effect and that may depend upon the parties. The Court has to make the assumption, until it's finally resolved, that substantial issues are still in dispute, and those substantial issues relate to the issue of custody and visitation, despite the representations of counsel here. Therefore, if those issues are in dispute, the Court estimates CT Page 8751 that the time for resolution of dispute would be at least one year and that the husband ought to pay his escrow in advance, six months of the living costs related to that, i.e. six months of the agreed-upon figure of $1,000.00 per week, to be deposited with Attorney Bougatso. In the event there is a contest, the Court anticipates legal expenses at least of $50,000.00 for the wife's position on the issues of custody and visitation, and the husband ought to, therefore, provide $25,000.00 in advance to cover those issues. Again, if those issues are resolved quickly, there could be a refunding process.
In regard to the request by the wife for an additional $327.00 as child support, that is a matter for the Greek court. The $1,000.00 expenses are, basically, undertakings under the Hague Convention to encompass the cost of living, pending ultimate decision of the Athens court on the issue of permanent support.
The Court will further order that the husband pay the State of Connecticut $8,470.00 as an undertaking, as his responsibility as a parent to support his child here. I'm sure that if the child were living in Greece, that would be his obligation there.
With regard to the issue of the attorney for the minor child, a bill has been submitted and marked for identification. will order that 50 percent of that bill be paid by the husband and 50 percent paid by the wife.
The final undertaking ordered by this Court is that a court in Greece will enter these undertakings as their order. The reason for that it: None of this Court's undertakings, even those agreed to, can be guaranteed unless a court of similar jurisdiction to this Court and the court of Greece enters an order substantiating those undertakings. Even if monies were deposited with Attorney Bougatso that order can be overturned by a court having jurisdiction over him.
It is clear to this Court that, unfortunately, the applicant husband had made misrepresentations to this Court and the Court cannot rely upon his representations or undertakings without that being backed up by the court in Greece.
We live in a world that depends, sometimes, on people's words. But at times, those words must be guaranteed by somebody who has substance. This Court will not order the return of the CT Page 8752 minor child unless these undertakings are all ordered by the Greek court. Can that be accomplished? I think it can. From what counsel here have said, it can be accomplished very pragmatically and very practically. If their word is really good they, essentially, have the basis for an agreement on these substantive issues involved between the parties. And if it's really agreed to, all these undertakings, then the only issue is how much child support and how do you split the property in Greece. And if that's really the only issue that's left, as well as how you work out some visitation, it would appear to this Court that if neither party is speaking with "forked tongue," that the expenses which the Court has ordered as undertakings would be substantially diminished and the objectives of the parties accomplished. That's only a suggestion of this Court. I cannot order people to agree. Where the parties live in separate countries, and where they have agreement, that that agreement be backed up since each Court would not have jurisdiction over the body of at least one of the parties.
It is clear to this Court that if a proposed agreement were submitted to the court in Greece, that agreement, consistent with what is said here by counsel that they agree to, then the Greek court could very easily order it and we would be well on our way to resolving this terrible case. For example, the parties have said here, through counsel, that the dissolution ought to be by agreement, no fault, they ought to have joint custody of the minor child with the principal residence with the mother and reasonable rights of visitation with the father, visitation rights to be decided by the Greek court at a later time. If that were really agreed to, there should be no problem in resolving this case in Greece.
Just as a further order of this Court, pending the Greek court's decision on the visitation, until they've had an opportunity to hear the parties on that issue, the Court will enter as an order of undertaking the visitation that has been proposed by counsel for the minor child here. The substance of this written decision was entered orally September 8, 1997.
Barall, J.